**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WILLIAM A. BROWN, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0644 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

William A. Brown, Jr. alleges that his civil rights were violated when he was sexually assaulted by other inmates in the Harris County Jail.  Brown was a pretrial detainee when the assault occurred. (Docket No. 19).  Harris County and several other defendants have filed a joint motion for summary judgment.  (Docket No. 27).  Brown filed several responses with numerous exhibits, and the defendants replied.  (Docket Nos. 31, 35, 39, 41).[1]  Based on the pleadings, the motion, responses,  and reply, the evidence in the record, and the applicable law, this court grants the defendants' motion for summary judgment and dismisses this case.  The reasons are set out below.

**I.      BACKGROUND**

On or about February 23, 2005, Brown, an attorney, was arrested and charged with the unlawful possession of hydrocodone pills, a controlled substance.[2]  He explains that he was prescribed this medication to treat pain from a back injury.  Brown has had more than one surgical

---

[1]    Brown is represented by counsel in this case.

[2]    Hydrocodone, also known as Vicodin, is an opioid pharmaceutical described as a "semisynthetic narcotic analgesic" agent for the treatment of pain with "multiple actions qualitatively similar to those of codeine." PHYSICIAN'S DESK REFERENCE 560, 561 (64th ed. 2009).  It is classified as a Schedule III Controlled Substance. *See id.* at 561.

procedure on his back.  Brown reportedly suffers from neuropathy in his right leg, muscle spasms, and pain that radiates down his back and buttocks.  Brown claims that when he was arrested and incarcerated, he was eligible for disability benefits from the Social Security Administration due to his back injury.

Unable to post a bond after his arrest, Brown was booked into the Harris County Jail at 1200 Baker Street in Houston, Texas.  For the first few days of his detention, Brown was assigned to the Jail's "detox unit."  On March 2, 2005, Brown was transferred to the "6C2 dorm," a general population cellblock.  Brown describes the 6C2 dorm as a large tank holding approximately seventy inmates.  Because the 6C2 dorm was crowded, Brown and many other inmates slept on mattresses on the floor.

A diagram submitted by the defendants shows that the 6C2 dorm has six adjoining pods, or cells, which open to a shared day room.  (Docket No. 27, Exhibit 3).  The day room and the cell pods are separated by bars rather than cement walls.  A deputy sitting in a control center monitors the day room and cells.  (*Id.*).  The control center, equipped with electronic door controls, a telephone, loud-speaker system, computer, and video-monitor, is secured behind large plexiglass windows to allow surveillance of the cell block with the exception of a small toilet area.  (*Id.*).

Brown alleges that during his time in the 6C2 dorm, he was threatened by other inmates because he was a "middle aged, clean-cut, well-educated, white male of medium build with disabilities."  Brown alleges that on March 8, 2005, he told the deputy working in the control center, Sandra Andrews, that he was having "problems" with other inmates.  Deputy Andrews told Brown to pull his mattress into the middle of the day room so that she could keep him in her line of sight.  Brown did as instructed.  Brown alleges that despite this precaution, shortly after Deputy Andrews's

shift ended at 2:00 p.m., he was dragged to the back of a cell in the 6C2 dorm and sexually assaulted by multiple inmates.

The record shows that officers conducting an inmate count at approximately 2:30 p.m. saw that Brown was bleeding from the rectum and unable to stand.  Brown initially told one of the officers that a white inmate identified as Jessie Colvin had sexually assaulted him.  (Docket No. 31, Exhibit 19).  Brown later told investigating officers that he was assaulted in three different cells. Brown told the officers that something — he could not tell if it was a penis or a foreign object — was forced into his anus at least twice and that he was "masturbated on" by several other inmates. (*See id.*).  The inmates dragged Brown from the last cell and left him on his mattress in the day room, where he was discovered by the officers conducting the count.

Brown was examined at the Jail clinic and taken to a local hospital, where he was admitted. He was treated for pain and "lower gastrointestinal (GI) bleeding" due to trauma.  (Docket No. 31, Exhibit 11).  He suffered a "major GI hemorrhage" that caused a drop in hemoglobin.  He received a transfusion of two units of red blood cells.  (*Id.*, Exhibit 17).  A rape examination was performed to collect evidence of sexual assault.  (*Id.*, Exhibits 11-15).  An examination the following day, March 9, revealed a "very, very small, nonbleeding tear at the anal verge," but no other abnormalities.  (*Id.*, Exhibit 8).  Brown returned to the Harris County Jail on March 11.

The sexual assault was reported to Harris County law-enforcement officials.  Both detectives and Jail officials investigated.  (Docket No. 31, Exhibits 16-20).  Brown was ultimately unable to identify any of the inmates who assaulted him.  Brown was released from the Jail on April 6, 2005, after 43 days in custody.  The drug possession charges against Brown were later dismissed.  The crime lab was unable to recover any DNA from the rape kit or from Brown's clothing.  No witnesses

came forward.  With no identified assailant, the District Attorney's office declined to prosecute and the case was closed.

On February 21, 2007, Brown filed this suit against Harris County, the Harris County Commissioner's Court, the Harris County Sheriff's Department, and Harris County Sheriff Adrian Garcia in his official capacity.[3]  Brown alleges that the Harris County Jail, which is "funded, supervised, managed, operated, and/or staffed" by the defendants, "suffers from perennial overcrowding and understaffing."  Brown contends that by allowing the overcrowding and understaffing, the defendants "directly permitted" the March 8, 2005 assault to occur.  Brown alleges that the defendants' failure to protect him from harm violated his civil rights under 42 U.S.C. § 1983.  Brown also alleges that because his back condition made him a "disabled individual," the defendants also violated the Americans with Disabilities Act and the Rehabilitation Act by placing him "in an overcrowded jail pod where he could not protect himself[.]"  Brown finally contends that the overcrowded and understaffed conditions at the Jail, as well as "the lay out of the pod" to which he was assigned, are "premises defects that posed an unreasonable risk of harm" under the Texas Tort Claims Act.

---

[3]   The amended complaint names former Harris County Sheriff Tommy Thomas as a defendant in his official capacity only.  (Docket No. 19).  Because Adrian Garcia has replaced Thomas as Harris County Sheriff, the Court substitutes Garcia in place of Thomas pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  The amended complaint also names Deputy Sandra Andrews, Deputy Garza or Garcia, and several "unidentified" deputies employed at the Jail.  As discussed below, however, Brown has not served any of the individual deputies.

Brown seeks compensatory and punitive damages and injunctive relief. The defendants have moved for summary judgment, arguing that all Brown's claims fail as a matter of law.[4] The parties' contentions are analyzed below.

## II.   The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the trial burden. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The moving party has the initial burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322-23. If the moving party meets this burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Forth Worth, Tex.*, 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). "The identified evidence 'must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial.'" *Id.* The nonmovant must do more than

---

[4]   In their reply the defendants note that Brown has waived several of the claims alleged in the amended complaint, which included allegations of unnecessary force against Deputy Garza or Garcia. (Docket No. 35, at 2). Brown has also conceded that there is no evidence to support his allegations that Harris County failed to discipline the deputies on duty at the time the assault occurred or to adequately investigate the alleged sexual assault. (*Id.*). Because Brown has abandoned these allegations, the court does not address them further.

simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citation and quotations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 478 U.S. at 587-88; *Hill v. Carroll County, Miss.*, 587 F.3d 230, 233 (5th Cir. 2009). Factual controversies are resolved in favor of the nonmovant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). "[C]onclusory allegations" or "unsubstantiated assertions" do not meet the nonmovant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts showing "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of proof, a reviewing court will not assume "'that the [nonmoving] party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075) (emphasis in original).

Brown has submitted multiple exhibits in response to the summary judgment motion, including reports, medical records, internal memoranda, correspondence, and deposition excerpts,

as well as his own affidavit.  Affidavits cannot preclude summary judgment unless they contain competent evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment if the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000); *see also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Id.* (internal citations and quotations omitted).

## III.    Analysis

### A.      The § 1983 Claims

Brown alleges that the overcrowded and understaffed conditions at the Jail resulted in a constitutional violation of his right to be kept safe from harm.  Harris County contends that based on the summary judgment evidence, Brown cannot show an unconstitutional failure to protect him from other inmates or a constitutionally deficient custom or policy that could establish municipal liability.

Section 1983 provides a right of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ."  42 U.S.C. § 1983.  Local government units such as counties or municipalities can

be liable under § 1983 for civil rights violations.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).  Municipal liability depends on whether the plaintiff can show the violation of a federally protected right through the implementation or execution of a policy or custom adopted by a policymaker.  *See Monell*, 436 U.S. at 691.

Brown acknowledges that overcrowding, standing alone, is insufficient to establish a constitutional violation under the Eighth Amendment or the Fourteenth Amendment.  *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (observing that, absent proof that conditions are impermissibly punitive, "[o]vercrowding of persons in custody is not *per se* unconstitutional").  The issue is whether Brown's allegations and the record evidence raise a fact issue as to whether Harris County officials violated his constitutional right to be protected from harm.

### 1.      The Failure to Protect Claim

The Eighth Amendment expressly prohibits "punishment" that is "cruel and unusual."  U.S. CONST. amend. VIII.  The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement" by ensuring that inmates receive adequate food, clothing, shelter, and medical care, and that "reasonable measures" are taken for inmate safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This includes the duty "to protect prisoners from violence at the hands of other prisoners."  *Id.* (quotation omitted).  The duty to protect recognizes that inmates may be vulnerable to attack:

> Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," . . . having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. . . . Prison conditions may be "restrictive and even harsh," . . . but allowing the beating or rape of

8

> one prisoner by another serves no "legitimate penological objectiv[e],
> . . . any more than it squares with "'evolving standards of decency[.]

*Id.* at 833-34 (internal citations and quotations omitted).  As the Supreme Court has emphasized, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Id*. at 834 (quoting *Rhodes*, 452 U.S. at 347).

The Eighth Amendment applies to convicted prisoners.  *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc).  The constitutional rights of pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, *see Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525-26 (5th Cir. 1999).  *See  Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (explaining that "[d]ue process requires that a pretrial detainee not be punished," while a "sentenced inmate . . . may be punished, although that punishment may not be "cruel and unusual' under the Eighth Amendment").  Brown's claim arises under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment.   *See Hare*, 74 F.3d at 639 (explaining that pretrial detainees and convicted prisoners "look to different constitutional provisions for their respective rights to basic needs, such as medical care and safety").

Pretrial detainees have a constitutional right under the Due Process Clause to protection from harm during their confinement.  *See Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (citing *Hare*, 74 F.3d at 650).  A pretrial detainee's rights are "said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  *Hare*, 74 F.3d at 639 (quoting *City of Revere v. Massachusetts Gen. Hosp*., 463 U.S. 239, 244 (1983)).  The duty to protect pretrial detainees from harm under the Due Process Clause is the same as the duty afforded under the Eighth Amendment.  *See Hare*, 74 F.3d at 650 ("[T]he State owes the same duty under the Due Process

Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including  . . . protection from harm, during their confinement.").

In cases that challenge "general conditions, practices, rules, or restrictions of pretrial confinement," the "reasonable relationship" test applies. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (citing *Hare*, 74 F.3d at 644).  Under this test, a constitutional violation exists only if the reviewing court finds that the condition of confinement is not "reasonably related" to a legitimate, nonpunitive governmental objective.  *Id*. (citing *Hare*, 74 F.3d at 640).  By contrast, when the harm stems from "a particular act or omission" of one or more officials, the action is "episodic act or omission" case.  *Scott*, 114 F.3d at 53 (citing *Hare*, 74 F.3d at 645).  "In an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."  *Scott*, 114 F.3d at 53.  He must prove that Jail Officials acted or failed to act with deliberate indifference to his safety.  *Shepherd v. Dallas County*, 591 F.3d, 445, 452 (5th Cir. 2009).  Brown agrees that his case concerns an episodic act or omission. (Docket No. 39, at 20).

The deliberate-indifference standard is an "extremely high" standard to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  A negligent failure to protect an inmate from attack is insufficient.  *See Farmer*, 511 U.S. at 835;  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).  An official acts with deliberate indifference "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U .S. at 847.  Deliberate indifference "is a degree of culpability beyond

mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *Id.* at 617-18 (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992); *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000)).

To avoid summary judgment, Brown must identify or present evidence showing: (1) that Harris County officials had knowledge of "facts from which an inference of substantial risk of serious harm could be drawn"; (2) that these officials actually drew that inference; and (3) that the official response to that risk indicates that they "subjectively intended that harm occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001)). To raise a disputed fact issue under this standard, Brown must identify or present evidence showing that Harris County officers or officials failed to act when they "were either aware or should have been aware of an unjustifiably high risk" of harm that is either "known or so obvious that it should be known." *Tamez*, 589 F.3d at 770 (citations and quotations omitted); *see also Sibley v. Lemaire*, 184 F.3d 481, 489-90 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 836).

Harris County argues that Brown fails to show that he was placed at risk as the result of an act or omission that rises to the level of deliberate indifference. The defendants have submitted an affidavit from Deputy Andrews. (Docket No. 27, Exhibit 3). Deputy Andrews testified that she was visually monitoring inmates in the 6C2 cellblock on March 8, 2005. She testified that Brown came to the pod control window on that date and complained that he was having "a problem with another inmate or inmates." (*Id.*). Brown did not identify a particular inmate or a specific problem. (*Id.*). She understood that Brown was "generally" concerned because "other inmates were bothering him and he wanted some protection." (*Id.*). Deputy Andrews did not have the authority to remove Brown from the cell and transfer him elsewhere. (*Id.*). Deputy Andrews "immediately told Brown

to move his mattress to the day room (common area) where [she] could see him best and to be able to observe any problem with him that might arise and protect him." (*Id.*).  Deputy Andrews saw Brown move his mattress as instructed and she had a clear view of him from the control room. (*Id.*).

Deputy Andrews acknowledges that there is a limited blind spot in the "far back corner" of the C62 cellblock.[5] (*Id.*).  This blind spot is "a small restroom area occupied by a sink and toilet and is probably only two or three feet" in length.  (*Id.*).  Because the walls in the cellblock are constructed of bars and not cement, Deputy Andrews could see into each separate cell within the C62 location.  (*Id.*).  Deputy Andrews kept Brown in clear view from the control pod and did not witness "anything unusual" before she went off duty at 2:00 p.m. (*Id.*).  Deputy Andrews, who has been a Harris County Deputy Sheriff since 1991, adds that she has not observed sexual activity by inmates in the Jail and knows of no other claim of sexual assault in the 6C2 dorm other than the assault on Brown.  (*Id.*).

Brown testified during his deposition that, shortly before the assault, he told Deputy Andrews he was having "a problem" with other, unidentified inmates and asked for "protection." (Docket No. 27, Exhibit 2, at 52, 58).  Brown testified that Deputy Andrews, who was the only deputy on duty in the control pod at that time, told him to move his mattress out of his cell and into the day room so that it was easily within her line of sight.  (*See id*. at 52).  Brown testified that after he did so, he "locked eyes" with Deputy Andrews such that he "felt like [he] was being observed." (*Id.* at 60).  There was "no doubt" in Brown's mind that Deputy Andrews could see him.  (*Id.*).  Because Brown does not dispute that Deputy Andrews took prompt action to protect his safety, the

---

[5]   Deputy Andrews includes a diagram of the C62 cellblock with her affidavit, indicating the location of the blind spot.  (Docket No. 27, Exhibit 3, Attachment).

defendants argue that he cannot show deliberate indifference as required for a failure-to-protect claim.

In support of this argument, the defendants submit an affidavit from John G. Peters, Jr., Ph.D., an expert in law enforcement and corrections, (Docket No. 27, Exhibit 5). Based on his review of documents about the alleged sexual assault on March 8, 2005, and his personal observations of the Harris County Jail, Peters testified that Deputy Andrews took appropriate steps to protect Brown from harm:

> . . . Deputy Andrews knew from her education and training that was provided to her by Harris County that Mr. Brown was under Harris County's and her care, custody, and control while incarcerated. Deputy Andrews followed Harris County policy and training in her efforts to provide suitable protection and elevate Mr. Brown's personal safety and she made an immediate and reasonable decision and accommodation by advising him to pull his mattress into the day room so that it was in her clear line of sight. Deputy Andrews did not have the authority to transfer Mr. Brown from the cellblock, but was reasonable in her efforts to relocate his mattress so that it was in her line of sight in a reasonable effort to offer protection to him. In my opinion, any reasonably trained jailer might have properly responded to Mr. Brown's request in the same way that Deputy Andrews responded by making an effort to provide more direct observation of the inmate.

(*Id.*). Peters adds that, based on his personal observations of the Jail facility, the deputy in the control pod had a clear view of the area C62 cellblock where Brown placed his mattress:

> . . . Deputy Andrews' testimony regarding being able to see into the area where Mr. Brown had repositioned his mattress is accurate. Having personally been to the 1200 Baker Street facility, Deputy Andrews' testimony regarding the cellblock and regarding repositioning Mr. Brown into her direct line of sight is accurate, and with respect to the limited blind spot area, this, too, is correct. If an inmate were being victimized by other inmates, in my professional opinion, a Harris County jailer or deputy would have seen the victimization.

13

(*Id.*).  Peters concludes that "the policies of the Harris County Sheriff's Office recognized and called for employees to take steps to protect inmates under their care, custody, and control."  (*Id.*).

The defendants present additional evidence showing that the part of the Jail where Brown was housed is designed to afford adequate monitoring and supervision of the inmate population by Jail personnel despite crowded conditions.  The defendants provide an affidavit from Paul R. Davidson, who has worked as a supervisor in the Research Planning and Development Bureau of the Harris County Sheriff's Department since August of 2001.  (Docket No. 27, Exhibit 4). Davidson explains that the Jail at 1200 Baker Street, which opened as a new facility in January 2003, is designated as an "In-Direct Observation" facility "where staff members continuously monitor inmates twenty-four hours a day, seven days per week."  (*Id.*).  Inmates are assigned by a Classification Section of the Sheriff's Department to specific parts of the Jail "based on their recognized status or needs."  (*Id.*).  Inmates with special needs, such as "declared homosexuals, mental health patients, or inmates identified as in need of assignment to the medical unit," are housed in cellblocks separate from the general population inmates.  (*Id.*).  In March 2005, inmates assigned to the C62 dorm were "general population" inmates.  (*Id.*).

Davidson testified that from January 1, 2003, when the Jail at 1200 Baker Street first opened, through March 8, 2005, there were 31 incidents of sexual assault reported.  (*Id.*).  After investigation, only 2 of those incidents were found to have actually occurred and 8 remained open pending further investigation and DNA test results.  (*Id.*).  The remaining 21 incidents were determined to be "unfounded."  (*Id.*).  Before the assault Brown reported on March 8, 2005, there is no record of any sexual assault allegation by an inmate housed in 6C2. (*Id.*).  Brown fails to show

14

that the Harris County Jail at 1200 Baker Street was so unsafe as to pose a clearly unreasonable risk to Brown's safety.

The evidence presented by the parties does not raise a fact issue as to an unconstitutional failure to protect Brown.  Deputy Andrews responded to Brown's statement that he was concerned about unidentified other inmates by ensuring that his mattress was moved to be easily visible to the deputy in the control pod.  The area of the Jail where Brown was housed was constructed to allow a deputy in the control pod maintain watch over all but one small area.  Brown was instructed to place his mattress where it would be easy to keep him in clear view.  He did so.  The record does not support an inference that Deputy Andrews or other officer acted with deliberate indifference to the general concern Brown reported.[6]  Based on this record, Brown has not identified or presented evidence raising a genuine issue of disputed fact material to determining whether the failure to protect him from harm on March 8, 2005 violated his constitutional rights.

### 2.    The Municipal Liability Claim Against Harris County

A municipality is only liable under § 1983 for acts that are "directly attributable to it 'through some official action or imprimatur.'"  *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).  For liability to attach, "the municipality must cause the constitutional tort, which occurs 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

---

[6]  To the extent that Brown complains that Deputy Andrews should have, but did not, report his request for protection to another deputy or to a supervisor after her shift ended, any such failure amounts to, at most, negligence.  As noted above, however, a negligent failure to protect an inmate from attack is insufficient to demonstrate deliberate indifference or to establish a constitutional violation.  *See Farmer*, 511 U.S. at 835;  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).

may fairly be said to represent official policy, inflicts the injury.'" *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (quoting *Monell*, 436 U.S. at 694).  To hold a municipality liable under this standard, "a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury." *James*, 577 F.3d at 617.  The plaintiff must establish a "direct causal link" between the municipal policy and the constitutional deprivation.  *Id.* (citations and quotations omitted).  This requires "direct causation" between the policy and the alleged violation.  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (internal quotations and citations omitted).  This requires "more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (citations omitted).  Harris County contends that there is no evidence that an official policy was the moving force behind the sexual assault.

Official policy "can arise in various forms." *Peterson*, 588 F.3d at 847.  Official policy usually exists in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James*, 577 F.3d at 617 (citations and quotations omitted)).  "A policy is official only 'when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy.'"  *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  "Knowledge on the part of a policymaker that a constitutional violation will most likely result from a given official custom or policy is a *sine qua non* of municipal liability under section 1983." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).  A plaintiff must show that, if the official

policy is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. *James*, 577 F.3d at 617 (internal quotations and citations omitted).

The Fifth Circuit has emphasized that the moving-force and deliberate-indifference elements of municipal liability "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *James*, 577 F.3d at 618; *see also Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (quoting *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)).

Brown acknowledges that there is no official written or adopted policy on which he bases his municipal liability claim. Brown relies on evidence that Jail overcrowding is a custom that fairly represents official policy. Brown notes that the Harris County Jail has a long history of overcrowded conditions. *See, e.g., Alberti v. Sheriff of Harris County*, 406 F. Supp. 649 (S.D. Tex. 1975); *Alberti v. Klevenhagen*, 790 F.2d 1220 (5th Cir. 1986). Brown provides two annual reports from the Texas Commission on Jail Standards stating that, in 2004 and 2005, the Harris County Jail was "overpopulated" or "occupied beyond the approved capacity" and failed to meet the recommended "1:48 officer to inmate ratio for direct inmate supervision." (Docket No. 31, Exhibits 7 & 8). Brown also points to correspondence between former Harris County Sheriff Tommy Thomas and Harris County Judge Robert Eckels about the Jail's lack of compliance with the recommended ratio. Brown maintains that Harris County officials' failure to take action to address the overcrowding and improve the officer/inmate ratio rises to the level of an official policy or custom, adopted with deliberate indifference to the likelihood of inmate-on-inmate assaults, and which caused the assault on Brown. (Docket No. 31, Exhibits 27 & 28).

17

The defendants object that the reports and correspondence Brown relies on are unauthenticated, unsworn, and filled with hearsay.  (Docket No. 35, at 2).  The defendants also note that Harris County operates more than one detention facility and that Brown's evidence addresses all Harris County Jail facilities in general and does not specify particular problems with the Jail at 1200 Baker Street.  (*Id.*).

While Brown's evidence shows a general pattern of overcrowding in detention facilities in Harris County, the evidence does not show a pattern of incidents of inmate-on-inmate sexual assaults at the Harris County Jail area where Brown was housed.  The defendants presented evidence showing that there had been 2 confirmed sexual assaults in the Harris County Jail at 1200 Baker Street before March 8, 2005.  (Docket No. 27, Exhibit 4, Davidson affidavit).  There had not been a sexual assault in the C62 dorm of the Jail until the March 8, 2008 attack on Brown.  (*Id.*).  As the Fifth Circuit has explained, "[a] pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'"  *Peterson*, 588 F.3d at 850 (citing *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  Other than the sexual assault Brown reported on March 8, 2005, the evidence shows no similar prior incident at the 1200 Baker Street Jail in the general population area.  A plaintiff must demonstrate a "pattern of abuses that transcends the error made in a single case."  *Peterson*, 588 F.3d at 850-51 (citing *Piotrowski*, 237 F.3d at 582 (citations omitted)).  The reports and correspondence about general overcrowding and staff shortages in Harris County detention facilities are insufficient to meet this burden.  "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."  *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*,

406 F.3d 375, 383 (5th Cir. 2005)).  A pattern also requires "'sufficiently numerous prior incidents,' as opposed to isolated instances." *Peterson*, 588 F.3d at 851 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).  Isolated incidents "will almost never trigger liability" on a municipality's part under § 1983.  *Piotrowski*, 237 F.3d at 578.  The Fifth Circuit has repeatedly recognized that isolated violations are not the persistent, often repeated, constant violations that constitute a custom or policy for municipal liability under § 1983.  *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 437 (5th Cir. 2008) (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)); *Bennett v. City of Slidell*, 728 F.2d 762, 764 n.3 (5th Cir. 1984).  Brown does not allege or show that such a pattern was present when he was incarcerated in the Harris County Jail in March 2005.  Nor does Brown identify or present evidence that Harris County policymakers were aware of, but chose to disregard, an unjustifiably high risk that overcrowding and understaffing would likely cause inmates to be sexually assaulted by other inmates.

In summary, the summary judgment evidence does not show that Harris County had an official policy or custom that was the moving force behind a violation of Brown's constitutional rights or that Harris County allowed overcrowding in the Jail with deliberate indifference to the risk of inmate-on-inmate assault.  Brown fails to raise a fact issue as to whether Harris County is liable under 42 U.S.C. § 1983.  The defendants are entitled to summary judgment on Brown's § 1983 claims.

### B.     The Disability Claim

Brown suffers from neuropathy and pain as the result of a back injury.  He alleges that he was eligible for disability benefits from the Social Security Administration.  Citing his disability, Brown claims that the Jail officials' failure to protect him from harm violated Title II of the Americans with

Disabilities Act (the "ADA") and the Rehabilitation Act.  Brown complains that Jail officials violated his rights as a disabled person by placing him "in an overcrowded jail pod where he could not protect himself[.]"

Title II of the ADA, which governs access to "Public Services," states in part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132 (emphasis added).  The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall solely by reason of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  The ADA states that "[t]he remedies, procedures and rights" available under the Rehabilitation Act are also accessible under the ADA.  *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133).  The Fifth Circuit has recognized that "[j]urisprudence interpreting either section is applicable to both."  *See id.* (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)).

The Supreme Court has held that Title II of the ADA applies to state prison facilities and state prison services.  *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (noting that state prisons "fall squarely within the statutory definition of 'public entity'" because the ADA, 42 U.S.C. § 12131(1)(B), defines public entity as "any department, agency, special purpose district, or other instrumentality of a State or States or local government").  The Supreme Court has also recognized that, "insofar as Title II creates a private cause of action against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."

*United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original).  A claim under Title II of the ADA requires a plaintiff to show that: (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by the defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability.  *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997).

The defendants contend that Harris County is entitled to summary judgment on Brown's ADA and Rehabilitation Act claims because there is no evidence that Brown was discriminated against or that he was denied access to services, programs, or activities because of his back injury.  In support of that argument, the defendants have presented evidence that Brown was appropriately assigned to the Jail's general population because he was not eligible for housing as a "special needs" inmate. (Docket No. 27, Exhibit 4).  Deputy Andrews stated in her affidavit that "Brown did not tell [her] that he was disabled or that he was requesting any special treatment or accommodation because of any disability."  (Docket No. 27, Exhibit 3).

In response to the summary judgment motion, Brown does not argue, or present nor identify evidence showing, that he was classified improperly.  Nor did Brown controvert the defendants' evidence that he was not discriminated against or denied access because of a disability.  Brown has not alleged or shown that his treatment violated the ADA or the Rehabilitation Act.  The defendants are entitled to summary judgment on his disability claims.

### C.    The State-Law Claim Against Harris County

Brown alleges that the overcrowded and understaffed conditions at the Jail, as well as "the lay out of the pod" to which he was assigned, constitute "premises defects that posed an unreasonable

risk of harm" for the purposes of liability under the Texas Tort Claims Act.  The defendants contend

that Harris County is entitled to sovereign immunity.  The defendants argue that there is no evidence

that Harris County waived its immunity and no evidence that there was a dangerous condition of real

property that caused an injury to Brown.

Subject to certain exceptions, sovereign immunity protects local government entities such as

Harris County from liability from state-law tort claims.  *See General Servs. Comm'n v. Little-Tex

Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001).  The Texas Tort Claims Act establishes a waiver

of a municipality's sovereign immunity for "personal injury and death so caused by a condition or

use of tangible personal or real property if the governmental unit would, were it a private person, be

liable to the claimant according to Texas law."  Tex. Civ. Pract. & Rem. Code § 101.021(2)

(Vernon 2005).  If a claim arises from an alleged premises defect, "the governmental unit owes to the

claimant only the duty that a private person owes to a licensee on private property, unless the

claimant pays for the use of the premises."  *Id.* § 101.022(a) (Vernon 2005 & Supp. 2009).  "Thus,

a governmental unit may be liable for an ordinary premises defect only if a private person would be

liable to a licensee under the same circumstances."  *County of Cameron v. Brown*, 80 S.W.3d 549,

554 (Tex. 2002).

The elements required to establish liability against a government entity in a premises-liability

case are: (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the

owner actually knew of the condition; (3)  the licensee did not actually know of the condition; (4) the

owner failed to exercise ordinary care to protect the licensee from danger either by not adequately

warning the licensee of the condition or by not making the condition reasonably safe; and (5) the

owner's failure was a proximate cause of injury to the licensee.  *Brown*, 80 S.W.3d at 554 (citing *State Dep't of Hwys. & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

Brown concedes that his injuries resulted from an episodic act or omission.  (Docket No. 39, at 20).  Brown has not presented or identified evidence showing that a defective condition at the Jail created an unreasonable risk of harm from which Harris County failed to use ordinary care to protect him.  Courts have rejected similar claims based on the layout of a jail, holding that such claims are insufficient to waive sovereign immunity or state a valid claim for premises liability arising from an assault at a jail facility.  *See Bonham v. Texas Dep't of Criminal Justice*, 101 S.W.3d 153, 159 (Tex. App. — Austin 2003, no pet.) (concluding that sovereign immunity is not waived where the layout of a prison facility is, at most, alleged to have made an intervening intentional act – a guard's sexual assault of a female inmate – possible); *see also Austin v. Hood County*, No. 3:06-1997, 2007 WL 631278 (N.D. Tex. March 1, 2007) & 2007 WL 1544379 (N.D. Tex. May 29, 2007) (rejecting an inmate's premises-liability claims that he was physically assaulted and beaten by gang members as the result of a defective layout at a Hood County jail facility).

Brown fails to raise a genuine issue of material fact on any of the required elements for a premises-liability claim.  Brown therefore fails to show that his claim fits within the narrow waiver of sovereign immunity prescribed by Texas law.  Harris County is entitled to summary judgment on Brown's premises-liability claim.

### D.    The Claims Against the Remaining Defendants

Brown asserts identical allegations against Harris County, the Harris County Commissioners Court, the Harris County Sheriff's Department, and the Harris County Sheriff, who is named in his official capacity only.  Claims under 42 U.S.C. § 1983 may be brought against persons in their

individual or official capacity or against a governmental entity.  *See Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)), *cert. denied*, — U.S. —, 2010 WL 154980 (Jan. 19, 2010).  "Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Goodman*, 571 F.3d at 395 (quoting *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 690 n. 55 (1978)).  Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Goodman*, 571 F.3d at 395 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted)).  The real party in interest in an official-capacity suit is the governmental entity and not the named official.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because Harris County is a defendant in this case, the official-capacity claims against Sheriff Garcia are dismissed as duplicative.

Under the applicable law, the Harris County Commissioners Court and the Harris County Sheriff's Department are not legal entities subject to suit.  The Texas Constitution designates the Commissioners Court as a county's principal governing body.  *See* TEX. CONST. art. V, § 18. Brown's claims against these entities must be dismissed for lack of capacity. *See, e.g.*, *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991); *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (noting that a Texas county sheriff's department is not a legal entity capable of being sued "absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority'") (quotation

24

omitted).        In addition to Brown's claims against Harris County, his complaint names several

individuals, including Deputy Andrews, Deputy Garcia or Garza, and several unidentified "Deputies

John and Jane Doe."  Harris County contends that Brown's claims against these individuals must be

dismissed under Rule 4(m) of the Federal Rules of Civil Procedure because he has not served any of

these individual defendants.  Brown has not filed a response to this argument or shown good cause

for his failure to serve the individuals named in his complaint.  Because far more than 120 days has

expired since the complaint was filed on February 21, 2007, the claims against the individual

defendants must be dismissed for failure to effect timely service.

**IV.    Conclusion and Order**

        The defendants' motion for summary judgment (Docket No. 27) is granted.  This case is

dismissed.

        SIGNED on March 2, 2010, at Houston, Texas.

                                                    Lee H. Rosenthal
                                            United States District Judge

25